We'll now go back to Lamberty v. Connecticut State Police Union. I believe Mr. Young is back with us in a different location. Yes, Your Honor. Thank you. Thank you, Judge Bianco. I'm reminded of Judge McKay's email the day after he, what my children call, face-planted at a speech about a dozen years ago. As I was saying, I apologize to the court in my opposing house. No, that's okay. Let me just say, I know we had given you a few minutes on the merits because we'd spent so much time on the jurisdiction issue, but my question, you may have answered my question, but I didn't hear the answer. My question before you cut off was on the merits of the fee issue, why, where there was no determination on the merits and no like consent decree or any judicial imprimatur, why the fees would be appropriate under the case Thank you, Judge Bianco. I was trying to address that and I'll go back to that. It's our belief, Your Honor, that under this court's decisions in Skrangla and Perez that the judicial sanction, the judicial imprimatur is inherent in a finding of mootness under the circumstances of this case. A phrase that was used in the last argument that I just heard was estoppel and the simple fact of the matter is that my client's claims are extinguished by virtue and there's a estoppel effect in the court's finding of mootness, it seems to me, because my clients have received complete relief and the court's mootness determination, assuming the court's correct on the mootness issue, it's not necessary because by determining that my client's economic claims were satisfied by the payments made to them, the court has given judicial imprimatur to that action by the defendants sufficient to sustain a finding of prevailing authority status under Buchanan. One of the points, one of the things that occurred to me is there are many civil rights cases in which the recovery even is going to be much less for the plaintiff, is going to be much less than the legal fees and the fact that the plaintiff gets complete recovery is a victory for those lawyers and it doesn't moot the case. If there's a settlement, I mean, you know, then nobody would get any legal fees. It can't have that effect. That's correct, Judge Walker, and you anticipate my next point. One other thing I wanted to point out here is that you got a total victory here. You got everything paid as a result of these settlement negotiations, and the judge apparently kept jurisdiction to make sure that the payments were made, and this had nothing to do with Janus, which was a decision by the Supreme Court effectuating a rule to apply in cases as they developed with all the details to be worked out. Indeed, the details to be worked out on remand to the Seventh Circuit, so this was just a regular case, it seems to me, in which you got basically everything the client could have desired in terms of financial recovery. As the docket reflects, Judge Walker, my clients have not complained about the amounts that were paid to them owing to the fact that they were explained and that they were in accord with the agreements we had made on that issue in the settlement negotiations. By determining the case was mooted by those payments, we believe that that puts judicial sanction to those payments. Let's go back to your original point, then. I think that this was not the case. Your recompense for the pending agency fees, the past agency fees, was not a unilateral action. It was a result of the settlement negotiations. That's exactly correct, Judge Walker. If it were a unilateral action and our action had nothing to do with it, as the district court seemed to believe, why were payments made for a period exceeding the I believe it is two years on personal injury actions in the state of Connecticut, yet the fees that were refunded go back to my client's original resignations from union membership? If the payments were unilateral, why was the interest calculated at the rate we agreed to in the settlement negotiations in front of Magistrate Judge Fitzsimmons? A contrary conclusion in this case, that judicial imprimatur has not been put on this outcome, would defy the statutory purposes of section 1988 as enacted. Let me just ask you about the case law. We haven't discussed the case law. The mock case, MA 547F3 at 344, this is a quote, the district court dismissed the complainant's moot and entered no order on their behalf. Thus, the plaintiffs clearly do not fit the definition of prevailing party as set out in Buchanan. How do you distinguish that? Your Honor, I'm not sure I've actually reviewed that. What was the name of the case again? I may have misheard you. MA is one, I don't have the other party, but it's 547F3, 344. But I think what I'm suggesting to you is I think what you're asking us to hold here is extraordinary. What you're saying is anytime a person voluntarily pays whatever it is you're seeking in the lawsuit and the case is mooted out, that they're a prevailing party. I think that would be inconsistent with Buchanan and inconsistent with our prior case law. I don't know that the fact that the judge said this is moot, it's been paid, but if there's some issue with the payment, you can something like that. If it's like a consent decree, Judge Bianco, then it falls within Skrangla and Perez. If it's a settlement that's enforced by the court, it falls within Buchanan and Skrangla and Perez. Your Honor, I don't want to be arguing that that's the equivalent of a consent decree when a judge says this case is over, it's moot, but if there's some issue in the future, you can reopen the case if that turns it into the equivalent of a consent decree that you're now a prevailing party. If the judge didn't utter those words, you'd not be the prevailing party? That may be the fine distinction on which this case rises or falls, Judge Bianco, and as you know, that often happens in the law. It's important, I think, however, I'm not going to pretend that this disposition of the case is not entirely confusing. I was entirely confused, quite honestly, after Judge Bolden had agreed to adjudicate the amount of fees that he determined that we were not prevailing parties. That was my understanding and the understanding on which I proceeded, but to deny fees in this case, particularly on the notion that this was voluntary, that it was unilateral, is in defiance of the record. And to say that this all happened because of Janus defies the notion that the fee refunds went back to the original claim in our complaint, and it frustrates the purposes of section 19-8. It in essence says... Let me ask you something else. If it is correct that you are not untimely in appealing the district court's refusal to grant you a declaratory judgment, if that issue remains open, then you are protesting, are you not, the district court's refusal to grant you a declaratory judgment? That is true, Judge LaValle. It is, I think, an important part of this because the statute... So your contention is that the district court should have granted you a declaratory judgment, and the proposition that it was moot was simply wrong because the possibility exists. The statute is still on the Connecticut books, and either because the statute is on the books, a future administration could change its decision. That's correct, Your Honor. And so if you are not untimely in appealing that, as Judge Walker was saying, and if it is correct that there has not been a judgment entered against you with 150 days expiring thereafter before you brought your appeal, you still have live the ability to contest that. And if we were to rule that there was no basis, no proper basis, for denying you a declaratory judgment, and you go back and get a declaratory judgment, or even get our ruling that you should have a declaratory judgment, then you do have judicial imprimatur over your prevailing party status. That's correct, Judge LaValle. If this court were to do that, that makes it easy. I was under the impression before the argument that we couldn't do that because there was the untimely appeal issue, which barred us from defending for summary judgment, and no proper entry of summary judgment against you on your motion for summary judgment, then the issue of your entitlement to declaratory relief is not behind us. It's something that remains open on which we could direct that you do have an entitlement to declaratory relief, or we could remand it for the district court to make a determination on that. Well, whatever. But the thing that bars you now from getting judicial imprimatur would no longer be barring you from getting judicial imprimatur on your prevailing party status. That would be correct, Judge LaValle. If the court were to determine that we are entitled, that the district court erred when it found the question moot, and I could find no decisions which said that the mere representations of bureaucrats or elected officials, that they wouldn't do it again, while the statute remains on the books, moots the case. The district court cited a number of cases where it said supported the proposition that a change in law moots the case, but that's a change in the subject law, not a change in the moot. But as you're suggesting, if this court determines that the district court erred when it refused to award declaratory relief to my clients, that makes this case easy. We win the attorney's fees issue, or at least a reversal on the attorney's fees issue automatically, it seems to me. But even if we don't win that case, that first issue, for whatever reason, that our repeal was untimely, or notwithstanding the confusing decision and entries of the district court, or that we aren't entitled, in fact, to declaratory relief, the question of attorney's fees comes up and is a little bit harder. And we respectfully submit that. But in a case where damages are claimed, where damages are paid, and damages exceed those which would be available if, for example, we had filed a lawsuit on June 28, 2018, for fees collected during the limitations period, I think it's, as I said, I think it's two years, then that requires our judicial imprimatur, the judicial sanction to the behavior of the defendants. It says, in essence, we don't want to fight about this. We're giving you everything you could win in the court. And the judge is agreeing. Judge Bolden agreed that we had received everything we could obtain in court. And if we didn't, come back to me. I'm keeping my eye on them. Under these circumstances, it should be no, whatever the motivation of the defendants. I don't understand why a finding of mootness says you've gotten everything you were asking for. It doesn't say you were entitled to your entitlement under law to get it. So I'm not sure that the finding of mootness in any way sanctions your entitlement to receive what you got. Well, it is in essence, Judge LaValle, I would maintain a compromise. Look, if I sue somebody and said, you gave me a dirty look on the sidewalk the other day, and therefore I demand damages of $100. And then the defendant says, look, Judge, I don't want to have a dispute here. I'm going to give him the $100. He'll go away. And the judge then says, OK, this case is moot. The judge has said it's moot because I've gotten what I was asking for. The judge has not in any way sanctioned the appropriateness of my except to say that this was a case that was litigated fully, vigorously by both sides. And the Civil Rights Attorneys Fees Act of 1976 promotes that. What Judge Bolden in essence said, the district court said was that the only people who are able to obtain full recompense in the costs which are represented by an attorney's fees award are the people who get the brass ring of a Supreme Court decision. I don't believe that the very purpose of the as this court has said, the very purpose or excuse me, as the Supreme Court said in Hensley v. Eckerhart, the purpose of 1988 is to assure effective access to judicial process for persons with civil rights grievances, unquote. If the court limit the entitlement to attorney's fees to only those litigants who actually win the decision and deny it from public officials who I think wisely say, okay, we're not going to fight about it anymore. And then courts say that the case is moot and then deny the fees, then you're going to have less civil rights litigation. Now, that strikes me as contra the purposes of section 19. I realize I'm well over my time, Judge Bianco, and I would merely say in conclusion here, the decision of the district court to both on the merits and attorney's fees should be reversed. And the case remanded for further proceeding to consistent with the court's judgment and directing the district court to award attorney's fees for this appeal. Unless the court has any other questions, I'll reserve the balance of my time and thank the court for its attention. Right. Thank you, Mr. Young. We have Mr. Stegman. Stegman. Yes, thank you. Todd Stegman, representing the defendant, Appali Connecticut State Police Union. May it please the court. From our point of view, the court should dismiss the plaintiff's appeal from the summary judgment ruling in order for lack of jurisdiction and affirm the district court's ruling denying attorney's fees to the plaintiffs. But first, I'd like to address the issue of appellate jurisdiction or lack thereof. There is no scenario under which, sorry, my light just went off. Apologize for that. There's no scenario under which this court has jurisdiction over the plaintiff's appeal from the summary judgment ruling in order in 2018. I'd just like to point out, first of all, that the plaintiffs have been declaring throughout this entire appeal that the summary judgment ruling in order was a final decision and a dismissal. On Form C that was filed with the Court of Appeals, the plaintiffs claimed it was a final decision. They identified- That can't bind us if in fact it wasn't a final decision. But to the extent that the defendants have conceded that it was a dismissal, it's- People concede things. They want courts to hear cases. Very often the parties don't like the idea that there's no jurisdiction and yet there's no jurisdiction because the law has not been followed to establish jurisdiction. Right. So, Your Honor, our contention is that it's clear there's no jurisdiction here under either scenario. Well, but there's another scenario. There's another scenario is that the judge- We don't have jurisdiction because the case can't be appealed because there's no judgment to appeal from. So, that's why- And the case is still extant in the district court as we sit here now. And the judge awarded attorney's fees, which can be done on an interim- Did not award attorney's fees, but that they can be awarded on an interim basis if we want to. Or the case could be finalized and then there could be another litigation over whether attorney's fees are appropriate under those circumstances. But there's been a lot of litigation as to why those attorney's fees would be appropriate here, or not. But in any event, if all we have before us is the motion for attorney's fees and the judgment denying attorney's fees, if that's all that's before us, because nothing else could have been before us given what the judge did in the first opinion, then that's the situation. And I wonder if you could just address that, where that leaves us. I think from our standpoint, where it leaves the court is that it has no jurisdiction over the appeal relating to the summary judgment ruling and order, and it should address the decision denying attorney's fees. But it's not just because of untimeliness. The point I'm making is we have no jurisdiction because there was no final judgment yet. We will get jurisdiction at some point. Maybe there'll be a final judgment in that first action. So, your honor, I don't agree with the proposition that there was no final decision. I think there's no way to interpret what the district court did other than saying that it's a dismissal. Well, you never moved to dismiss the complaint. You never moved to dismiss the complaint and got a dismissal of the complaint. And all the judge did was deny plaintiff's motion for summary judgment. That's what the order does. Also, your honor, directed the clerk to close the case. And so at that point, when the district court- That's an administrative closure, and then we've got case law on that. That does not dismiss a case. It wasn't at the final stage of the case, but earlier on in the case, in 2015, there was a motion to dismiss the complaint, but that's not what the judge decided. In the final stage of the case. But our position is that the 2018 order, including the docket entry, directing the clerk to administratively close the case cannot be interpreted any other way than as a dismissal and a final appealable decision, which triggered the deadline to file the notice of appeal. Unless we have a law that requires a judgment. Unless the rules require a judgment, a judgment of dismissing the case. But your honor, even under those rules, under FRAP 4A7 and FRCP 58C2B, when the rule 58A requires a separate document, but the district court fails to do that, it doesn't give the potentially appealing party an unending time without a deadline to file a notice of appeal. It adds 150 days. Judge Walker's point on that is if you don't have it, I cited that rule myself, you heard me, but his point is if you don't have a dismissal in the first place, you don't then get to use that 150 day clock. And his point, administrative closure is not a dismissal. The judge didn't use the word I'm dismissing. And at that point in time, you didn't seek to have him formally dismiss the case. So whether or not your party opposing counsel called it a dismissal or not, we're not bound, as was pointed out, we have to determine whether it was a real dismissal or not. And the other thing that we mentioned before, I just want to highlight is when a judge says, come back to me, if there's some issue that creates another ambiguity as to whether or not he was trying to dismiss it at that point, because he did suggest that there might be some coming back to him. Your Honor, at that point in time, there was no clear expectation that the plaintiffs would be coming back to him. And almost two years have gone by, and the plaintiffs have never gone back. So at some point, there must be some type of, you know, latches issue about failure to assert that claim if it still exists, and it doesn't exist. There's no contention here or representation here from plaintiff's counsel that there's an indication or a need to go back to the judge with respect to the agency. If you want to spend a minute on the attorneys, the merits, I'll let you do that. Go ahead. Yes, thank you. From our point on, our position on the attorney's views is that the case law under Buchanan and this court's decisions, which are cited in the briefing, including the Ma versus Chertoff case, the New York Federation of Taxi Drivers case, and some others that are cited in the briefing, make it clear that even when there's an agreement for a defendant to voluntarily provide the plaintiffs all that they're seeking in terms of relief in the case, that that does not trigger a prevailing party status. And the language in the Ma versus Chertoff case, which Your Honor cited to plaintiff's counsel before, makes this abundantly clear. It's at 547 F3rd at 344. In that case, this court stated that defendants voluntarily gave Ma the relief he sought. Indeed, after the defendant's actions, the district court dismissed Ma's complaint as moot and entered no order on his behalf. Thus, Ma clearly does not fit the definition of a prevailing party. Let me ask you this. Wasn't the decision, there were negotiations, right? There were settlement negotiations. There's no dispute about that, right? There were settlement conferences, Your Honor. Settlement conferences before Magistrate Judge Holly Fitzsimmons, right? Yes, Your Honor. And various things were agreed to, except for the amount of the attorney's fees. Not the fact of the attorney's fees, but the amount. Is that correct? I can't speak. I was not representing the union at the district court level. I can only understand that from what's on the docket. From what I understand, there was no settlement agreement in the case. There's no document signed by the party. I'm not saying and then there was a, but in terms were understood and the only thing that was left open were the attorney's fees. And the actual recovery of the plaintiffs was in conformity with those settlement negotiations without reference to the declaratory judgment. Is that accurate? Your Honor, my understanding is that the union paid the plaintiffs everything that they demanded in terms of the amounts of the agency fees at the settlement conference. But from our point of view, it doesn't matter whether the amount of their demand was communicated in a settlement conference or in an inauguratory answer. The plaintiffs made a claim that this is the amount of our damages claim. And the defendant voluntarily paid the full amount of the claim for damages. That mooted the case. There was a settlement also. There were negotiations and a settlement over the interest, right? 4.5%. And that was a result of a negotiation. I can't speak to the negotiation aspect of it. I can only upstate what I understand from the record and that the amount mooted the claim for damages. It didn't moot the demand for declaratory relief. And would you deny that if the district court granted the declaratory judgment as well, that then there would be a judicially sanctioned order that made the plaintiffs the prevailing party? Well, I guess, Your Honor, I think it would depend since there's multiple parties in the case, it would depend on the extent and scope of the declaratory ruling. Well, the scope of the declaratory ruling was to say that the plaintiffs are correct in their claim that it was a violation of law to take these payments from them. And the court rules in conformity with the request for declaratory relief that that was illegal on the part of the defendants. Right. So, Your Honor, I think that the details would matter, but I would point out to the court that I believe that there's language in Buchanan in which the Supreme Court stated that even a judicial pronouncement of a violation of law without any other judicial relief does not But there's other judicial relief. This is a judgment. This is a declaratory judgment. It's merely saying it in the course of, if a judge in the course of just discussion says, yes, well, it was a violation of law, that's different from a judgment that grants the plaintiffs what they have sought in their complaint, a declaration that it was illegal and that it is illegal to take such payment. Your Honor, I would agree with the general proposition that a judgment favorable to the plaintiffs on the case is understood under Buchanan to be a prevailing party status. I might just add that the declaratory judgment might not be limited to the fact that there was a violation of law. It might be a declaration that the Connecticut statute is unconstitutional and of no effect, no legal effect in the future. Right, so which is why I prefaced my comments before, Your Honor, by saying I think it would matter what the declaratory ruling or declaratory judgment said, and it would matter against which party the declaratory ruling or judgment, if affected. So my client here is the union. The issues that related to the union were a collective bargaining agreement that became moot because it expired based on date and the amount of the agency fees collected. So I think that the party against whom the declaratory judgment was entered and affected would matter. I think the details of what the declaratory ruling said would matter, but our proposition... In any event, if there has not been a judgment, if there has not been a failure on the part of the plaintiffs to take timely appeal from a judgment against them because there hasn't been a judgment against them and the issue of declaratory relief remains open, remains unadjudicated, and not yet subject to appeal, then the possibility remains open that the plaintiffs can get judicial sanctioning that would be sufficient to make them the prevailing party. And it is premature for us to rule on the argument that you are making that they're not the prevailing party because all they got was voluntary compliance and they didn't get an order of judicial sanctioning of their entitlement to prevail. Your Honor, I'm not sure I accept the premise because our position is that this was a final appealable order, and as the plaintiff has acknowledged throughout the entire pendency of this appeal, it was understood as a dismissal because the court directed the clerk to close the case and declared the entire case as moot. If the entire case is moot, which is a threshold issue for jurisdiction, then there's no way to interpret that other than it's your claims being dismissed without prejudice. All right, I think we covered that earlier, so why don't we move to Ms. Kindle, if I pronounced that correctly? Kindle, Your Honor. Kindle. Kindle, that's all right. May it please the court, I am Claire Kindle, Solicitor General for the State of Connecticut. With me is my colleague, Assistant Attorney General Richard Sponza. We represent the state defendants. I wish to just take a moment to thank the court for having this by video. This conversation would have been much more difficult by telephone, so I thank you very much. Even with the technical hiccups, this is by far a superior platform. And I apologize because I think my camera is down, but your faces are up, so I apologize for where my eyesight is. Your Honors, there was a final judgment. Their appeal is untimely. Even if it wasn't untimely, their case is moot, and they are not the prevailing party under black-letter law. So let's go, let's take it step by one. At the end of June of 2018, the rule of law changed. Prior to June of 2018, ABUD was the rule of law for the country, and after June of 2018, Janice reversed and overturned ABUD. Until that ruling, under this court's ruling in Holian, the state actors would have been entitled to qualified immunity, and the private actors, the union people, are entitled to a good-faith defense. And therefore, the declaratory judgment was already rendered by the U.S. Supreme Court, and there was nothing else for the district court to do. And you want to say, well, how do we know the district court knew this made a final judgment? I refer the court to the district court's ruling in the attorneys' fees case, in the attorneys' fees decision, and particularly JA-439, and where the court says, listen, we denied their summary judgment, holding that all of their claims had become moot because there was nothing else for the district court to do. Now, our esteemed opposing counsel has said, well, this is kind of like the Flying Dutchman. Who knows where it ever will end? Well, we know where it ends because we have Federal Rule of Civil Procedure 58A, I think, C, you know, C2, which basically says you have 150 days. Excuse me, counsel. Can I just ask you about the district court's pronouncement that he had nothing further to do? First of all, there had been no adjudication on the declaratory judgment. That was one thing. And secondly, he conditioned his decision on being able to return to before him, come back before him on the question of complete vindication on the damages. And so it seems to me that his pronouncement that there was nothing for him to do, he may, you know, there may have been some amnesia there. I don't believe so, Your Honor. And let me tell you why. Because the court in his decision on the motion for summary judgment said, after Janus has been decided, there is nothing left for me to do. The Supreme Court has spoken. And as of the date of the Supreme Court's ruling, the law of the land has changed. Immediately thereafter, the state defendants stopped collecting union dues. And within a short time period, on August 7th, the union refunds the dues. And two days later, the plaintiffs file for summary judgment. There was, at that point, there was no declaratory ruling because there was nothing the state was doing and nothing that the union was doing that would violate the newly minted understanding of the constitutional rights presented by Janus. If he meant to permanently end the case, why did he dismiss the motion without prejudice? That would seem to be inconsistent with the idea that this case is over for good. Why would he say denying the motion, not dismissing, denying the motion without prejudice? And I also want to point out, I just looked back, he said there's nothing for this court to order defendants to do now. The word now is at the end of that sentence, which also, again, it's confusing, but it also might suggest that you can come back to me. Well, your honor, I think that it was the plaintiffs have said, well, you know, they may, they've done all this now, but they may change their minds and they may do this. Well, I mean, you know, the legislature hasn't reversed it. Well, first of all, there's been COVID. So, I mean, legislature's not doing anything at the moment, but. No, I think they didn't sue those folks. They sued. Prejudice wasn't like something else could happen. It was, it was because we're not sure it's been properly calculated. That was, that was what he, in his paragraph where he says, I'm denying it without prejudice. He specifically said that the plaintiffs are now telling me they may not have been properly calculated. So it wasn't suggesting, you know, we don't know what the legislature is going to do. It's like, you know, there may be still something I have to do here based upon the calculation. After the words without prejudice, to renew in the event that there's an effort to re-induce, to re-introduce agency fees. So it is a right now, here it is, we're done. In addition, as noted above plaintiffs for the first time now argue that their fee and reimbursements had not been properly calculated. That issue is not properly before the court. So I understand what you're saying, but it certainly also included this idea that the calculation may need some judicial involvement later on. Right. But they gave the court, they gave, they, they granted the motion. They had a final judgment and it was up to the plaintiffs to come back and say, if there's a problem. And if you take a look at the attorney's fees decision, they say, listen, I note that the plaintiffs never showed up with a problem on the, with respect to their attorney's fees. And this case is on all fours to Buchanan, New York State Federation of Taxi Drivers, Aaron Brush, which is out of the 11th Circuit and Ma versus Chertoff. In all of those cases, the, there was a change in law. There was voluntary compliance and the courts all found that there was exactly like this. The cases were moot and they, the other side was not the prevailing party under the well-established language of Buchanan. You keep saying there was a final judgment in this, in this case in 1918, but 2018, but how could there have been a final judgment? Tell me how that, how there's a final, you've heard our arguments on this before and our discussion on this question. No judgment was entered. Your Honor, that's why you have Federal Rule Civil Procedure 58. If there is no separate document that says that there is a, that judgment has been entered, then you have 158 days for your 30-day clock to go. Otherwise, I'm sorry, let me just go back. Normally that implies that the order itself contains the judgment and it's not on a separate piece of paper, which is required. And if only the order has the judgment, then the 150-day rule comes in. But here there wasn't a judgment even in the order. There was just a dismissal of the plaintiff's motion, plaintiff's motion for summary judgment. The defendant never moved for summary judgment. There was no, there was no judgment. Just one thing, there was no judgment dismissing the complaint is what I'm saying. What there was, was Your Honor, was a determination by the district court that the case was moot and that there was nothing else this court could do. And they repeatedly say that in the decision on the attorney's fees. And I will also, before I forget, Your Honor, you raised the issue of the state's motion to dismiss. That was filed in May of 2015 on 11th Amendment grounds. And it was resolved by entry number 44, which is March, 2016, by a notice, agreement of the parties, a stipulation that they were not, so you had initially had asked initially in argument, Your Honor, saying that the state's motion had never been acted on. It had been resolved by agreement, entry number 44, March, 2016. And just prior to that, did the court sign off on that agreement? I think it was just, I don't know if it was signed off, Your Honor. It was a stipulation by the parties so that it was no need to proceed. And the motion to dismiss was solely on the 11th Amendment. And so that would not have been where it is. With respect to the mootness issue, I think this is the same as granted state. And there's a presumption that state actors will act lawfully. It may moot the future, any future attempts by the state to collect the agency fees or to hold them, take them. But it doesn't deal with the question of fees that have already been recovered from the state and to the extent to which they should be repaid. That's left open. And if you look at Reed Janus itself and the final decision, it was all remanded back to the Seventh Circuit for proceedings not inconsistent with this opinion. And there was a lot left to be done in the case. Not really, Your Honor. If you take a look at the Holian case, which is a Second Circuit case that deals with exactly the issue of retroactive payment of unions, a different Connecticut state union did not repay the back fees. And both the collection of back fees as well by both the state actors and the union actors were determined to be covered by qualified immunity and good faith immunity because they were relying on ABUD. And that the second ABUD was overturned and Janus was the law of the land, then the state and the unions were in compliance. And so you have to evaluate this case on the pre-Janus, their ABUD was a law of the land. Post-Janus, fair share fees were not allowed to be collected. And once Janus became the law of the land, both the state and the union- What is the language in Janus that orders back fees to be repaid and recovered? There isn't. Okay. That's my point. Right. And by- Janus just established a rule, a Supreme Court precedent, which is then applicable in, and like any other Supreme Court precedent, insofar as it goes. And it announced that it was no longer, it was unconstitutional for unions to take these agency fees. Correct. And the issue of retroactive, a retroactive application of Janus was decided by this court in Holian. And this court determined, not this particular panel, but the court determined that retroactive fees are not required under Janus and that state actors are entitled to qualified immunity and that union actors are entitled to a good faith defense. And therefore the district court was exactly right with respect to his ruling, which was shortly after Janus was decided, it was in four months of it, that there was nothing left for this court to do. The case was moot and therefore it should have been closed. And there was, so I would respectfully submit, there was certainly a final judgment. They were clearly out of time and that they are clearly not the prevailing party because otherwise, and there's cases all over the country with the exact same issue pending. And I would refer the court to Penning, Cook, Wenzig, and Yohn, which are cited in our brief, as is all of the other cases that were cited, including Mott, which is part of the briefing. And say that this is, what the district court did below here is neither unique nor strange. All of the district courts that are dealing with this issue all across the country are finding that Janus mooted out the claims that were before them and that the other plaintiffs who did not quote-unquote get the brass ring and go to the Supreme Court, don't get to Tracy. Why did you or whoever the lawyer was for your clients not move to have the complaint dismissed for mootness? I don't have, I think it was our understanding, your honor, that the case had been dismissed for mootness. That by the court's order that the, by saying that this case was moot, there was nothing for this court to do. And I would just turn for a moment, your honors, to the issue of the settlement agreement. That's under a clearly erroneous standard of review because the district court considered that those, that settlement agreement arguments and rejected them in the, as a matter of the decision on the attorney's case. And moreover, your honor, there is no settlement agreement. The fact that there were or not settlement negotiations does not put a judicial imprimatur. You need, and the court case law is very clear, the Scaramoza, the Scaragella and Perez do not apply to this case. Scaragella is an aristic case. It doesn't even have a prevailing party. And Perez was a case where the case, where there was already court order when the settlement came in. And then Roberson, somebody stands for the proposition that if a private settlement has judicial implementation, then you would have a, you would have some sort of judicial imprimatur. So the district court, I would just like to respect that the district court got it right, that there was a final judgment, that the appeal from the summary judgment motion is untimely and that... Why, when the district court said there's nothing left for this court to do at that time, why weren't the plaintiffs entitled to declaratory relief from the district court? Why isn't that something that the plaintiffs were entitled to get in view of the fact that the, that the statute remained on the books of Connecticut? Because Janice was the law of the land now. Because at that point, the Supreme Court had spoken. There was nothing that the district court... It was very clear from what the Supreme Court said that an overturning over 40 years, four decades of jurisprudence, relying on Abood, that once the Supreme Court spoke, there was nothing left for the district court to say. And the district court said as much in their decision and the motion for summary judgment. All right. Thank you, Ms. Kendall. Mr. Young, you have two minutes for rebuttal, and I'm going to be very strict. It's really going to be two minutes, so... We've been working hard, although I take a look at my picture and I realize I should, would have cleaned up my office had I known we'd be doing it this way. I went to college in Prince Edward County, Virginia. You'll allow that I am not entirely confident in public officials' compliance with plain Supreme Court law. They closed their schools for four years rather than integrate them after Brown. They were one of the five co-defendants in Brown. The point being that the representations of public officials are not sufficient to move a case. Public acts are. Ms. Kendall cites COVID as the reason the state legislature in Connecticut hasn't acted. Well, that doesn't explain the 20 months after Janus was decided for the non-repeal of the statute, which we challenge as unconstitutional. Both Judge Walker and Judge and Ms. Kendall cites Janus. Well, Janus decided the legality of such statutes, but Supreme Court decisions, as this court knows, are not self-executing. The law remains on the books. The state legislatures had plenty of opportunity to cure it. They haven't. Two of my clients remain employees of the state. As to the entry of judgment, I think we're all confused about the status on that, but I would point out that the parties to whom that decision is of benefit, the order and decision that the court made on our summary judgment motion, the defendants have not moved for entry of judgment. Why would we? On that, unless the court has any other questions, I thank the court again for its attention and its indulgence on my technical difficulties. Sorry, that's not your fault, and I want to thank all of you. Obviously, we wouldn't have given you as much time if it wasn't being helpful to us, so we appreciate all your arguments, and we'll reserve the decision. Thank you. Have a good day.